**Roderick Glenn MACK, Petitioner,**

v.

**Harry K. SINGLETARY, Respondent.**

**No. 97–1175–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 3, 2001.

Thomas Franklin Almon, Jr., Miami, FL, Michael B. Holden, Fort Lauderdale, FL, Roderick Mack, Immokalee, FL, for Petitioner.

Cynthia Ann Greenfield, Mark Rosenblatt, Office of the Attorney General, Department of Legal Affairs, Miami, Fort Lauderdale, FL, Respondent.

### ORDER

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Roderick Glenn Mack's Petitioner for Writ of Habeas Corpus.

**THE MATTER** was referred to the Honorable United States Magistrate Judge Barry L. Garber. A report recommending that the Court deny Petitioner's Petitioner for Writ of Habeas Corpus, dated November 14, 2000, has been submitted. Petitioner filed his objections on December 13, 2000.

The Court has conducted a *de novo* review of the file and is otherwise fully advised in the premises. Accordingly, it is

**ORDERED AND ADJUDGED** that United States Magistrate Judge Garber's Report of November 14, 2000, is hereby RATIFIED, AFFIRMED and APPROVED in its entirety. Therefore it is

**ORDERED AND ADJUDGED** that Petitioner's Petition for Writ of Habeas Corpus is DENIED. It is further

**ORDERED AND ADJUDGED** that all pending motions are DENIED as MOOT. It is further

**ORDERED AND ADJUDGED** that this case is closed.

## REPORT AND RECOMMENDATION

GARBER, United States Magistrate Judge.

THIS MATTER is before the Court pursuant to an Order of Reference by the Honorable Donald L. Graham, United States District Judge. Petitioner, Roderick Glenn Mack, has filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B).

For its consideration of this Petition, the Court has the following: a sworn memorandum of law filed by Petitioner, the state's Response and Supplemental Response to an Order to Show Cause and Supplemental Order to Show Cause, with multiple additional exhibits, and the transcript of Petitioner's state trial.

## PROCEDURAL BACKGROUND

On July 9, 1990, Petitioner was arrested and subsequently charged by information in Dade County, Florida, of attempted first-degree murder, armed robbery, unlawful possession of a firearm during the commission of a felony and aggravated assault. *See* Response to Order to Show Cause ("Resp.") at 1 [DE# 6]. These charges were in connection with an armed robbery and shooting at a Miami grocery store. Petitioner entered a plea of not guilty and proceeded to jury trial with two co-defendants on April 8, 1991, in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. *Id.* at 2. On April 17, 1991, Petitioner was found guilty of attempted first-degree murder, armed robbery, aggravated assault, simple assault and the unlawful display of a firearm. *Id.* He was sentenced to life imprisonment as an habitual offender.

Petitioner prosecuted a direct appeal of his conviction and sentence, raising the following claims:

1. The trial court erred in failing to conduct an adequate *Nelson* inquiry to sufficiently explore the defendant's allegations of incompetency of and conflict with court-appointed counsel and failed to advise defendant of his right to self-representation;

2. The trial court erred in failing to grant a continuance;

3. The trial court erred in failing to conduct a hearing to determine whether Petitioner's post-arrest custodial statement was voluntary;

4. The trial court erred in failing to advise Petitioner of his constitutional right to testify notwithstanding defense counsel's advice;

5. The trial court erred in precluding Petitioner from eliciting the exculpatory portion of his post-arrest statement;

6. The trial court erred in convicting and sentencing Petitioner for the unlawful display of a firearm where the offense arose from the robbery charge during the commission of a felony and where the offense arose from the same incidents upon which his conviction for robbery with a firearm was based;

7. The trial court erred in adjudicating Petitioner an habitual offender, and;

8. The trial court erred in sentencing Petitioner as an habitual offender where the court indicated there was

no discretion in applying the habitual offender statute's permissive penalties.

*See* Resp., Exh. F [DE# 7]. The Third District Court of Appeal reversed Mack's conviction for the unlawful display of a firearm, and remanded for re-sentencing, finding that the trial judge did have discretion to apply the habitual offender statute's permissive penalties. *See Mack v. State,* 608 So.2d 897, 898 (Fla. 3d DCA 1992). The appellate court rejected without discussion Petitioner's remaining claims as non-meritorious. *Id.*

On July 14, 1993, Mack was re-sentenced to life in prison. On appeal, Petitioner filed a memorandum brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Third District Court of Appeal affirmed *per curiam* on April 5, 1994. *See Mack v. State,* 637 So.2d 250 (Fla. 3d DCA 1994).

Petitioner subsequently filed a motion for post-conviction relief pursuant to Fla. R. Cr. P. 3.850, raising in part the claim of ineffective assistance of counsel. Relief was denied on March 7, 1995. *See* Resp., Exh. P [DE# 7]. The Third District Court of Appeal affirmed *per curiam. See Mack v. State,* 654 So.2d 1072 (Fla. 3d DCA 1995).

On January 24, 1996, Mack filed a petition for writ of habeas corpus in state court, claiming that: (1) the flight instruction by the trial court was reversible error; (2) evidence at trial was insufficient to support a conviction; and (3) the identity of Petitioner was never proven as the perpetrator. This petition was denied. *See* Resp., Exh. T [DE# 7]. On August 26, 1996, Petitioner filed a second motion for post-conviction relief pursuant to Fl. R. Cr. P. 3.850, raising the claim that attempted felony murder has been declared

unconstitutional by the Florida Supreme Court.[1] This motion was denied. *See* Resp., Exh. V [DE# 7].

On March 4, 1997, Petitioner filed the instant Petition and this federal proceeding ensued. Mack makes the following claims:

1. The trial court erred in failing to conduct an adequate inquiry into Petitioner's claims of ineffective assistance of counsel and neglected to inform Petitioner of his right to self-representation, in violation of the Sixth and Fourteenth Amendments to the Constitution;

2. Petitioner's due process rights were violated when the trial court refused to grant a continuance to allow retained counsel to prepare a defense;

3. The trial court erred in prohibiting Petitioner from eliciting exculpatory portions of his post-arrest confession;

4. The trial court violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights in failing to protect his constitutional right to testify;

5. The trial court violated Petitioner's Fifth, Sixth and Fourteenth Amendment rights in admitting Mack's confession without first determining that the confession was knowing and voluntary, and;

6. Petitioner was denied effective assistance of appellate counsel because counsel failed to raise certain meritorious issues on appeal.

*See* Habeas Pet. at 5–10 [DE# 1].

### DISCUSSION

#### I. Exhaustion

 It is axiomatic that issues raised in a federal petition for a writ of habeas

---

1. Petitioner does not dispute that this claim is unexhausted and therefore is not included as a ground for habeas relief in the instant Petition. *See* Petitioner's Mem. Applicability of *O'Sullivan v. Boerckel* at 3 [DE# 52].

corpus must first have been fairly presented in the state courts and thereby exhausted. *See Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Hutchins v. Wainwright,* 715 F.2d 512 (11th Cir.1983). The exhaustion of state remedies is a condition precedent to federal habeas corpus relief, and the petitioner has the burden of proof on the exhaustion requirement. *See Delaney v. Giarrusso,* 633 F.2d 1126 (5th Cir.1981). Exhaustion requires that the substance of the claim, as well as the federal constitutional issue, must have been presented to the state courts. *Anderson,* 459 U.S. at 6, 103 S.Ct. 276. When a federal habeas petitioner raises a claim previously presented in the state courts, but bases the habeas corpus claim upon new factual allegations, new legal theories, or materially different evidence than was presented to the state courts, then the claim has not been fairly presented in the state courts and the petitioner has failed to exhaust his state remedies in accordance with § 2254. *Givens v. Green,* 12 F.3d 1041 (11th Cir.1994).

Respondent does not dispute that Petitioner has exhausted claims two through six of his Petition. *See* Supplemental Response to Order to Show Cause ("Supp. Resp.") at 2 [DE# 13]. However, Respondent does dispute that Petitioner has exhausted claim one. Respondent asserts that Petitioner bases the claim on a different legal theory than the one on which it was based when raised on appeal in state court. Respondent argues that Petitioner asserted the claim in state court as "purely one of state law not involving the issue of conflict." *Id.* at 6 n. 1. According to Respondent, Petitioner's argument at the state court level focused on the competency of his court-appointed counsel, and did not fairly present the issue of whether a conflict existed between Petitioner and counsel.

■ Respondent's assertion that Petitioner's first claim is unexhausted because it was not fairly presented in state court is incorrect. On direct appeal, Mack alleged that the trial court failed to adequately investigate his claims of incompetency and conflict-ridden counsel, although the court was required to conduct a "meaningful inquiry" into his claim that his counsel was ineffective. *See* Resp., Exh. F at 14 [DE# 7]. It is true that the main thrust of Mack's claim was directed more toward counsel's alleged incompetence, and arguably less so toward the issue of conflict. However, Mack also asserted that the state court never inquired into the fact that he wanted to suppress his confession but counsel would not agree to the suppression. *Id.* at 16–17. Mack thus clearly articulated the substance of a claim as to the existence of a conflict with counsel. Furthermore, he specifically asserted that the trial court "failed to address the 'conflict' raised by Mr. Mack and his attorney." *Id.* at 17. In this federal proceeding, Mack alleges that the trial court should have inquired into the reasons for his dissatisfaction with counsel, but failed to do so. *See* Habeas Pet. at 25. He asserts that he informed the court that he was not "happy with [his] counsel ... [and] if [he] had [a] choice, he would like to have private counsel." *Id.* at 28. He also states that appointed counsel informed the trial court of Petitioner's loss of confidence in him. *Id.* at 27. Petitioner thus raises dual claims of incompetence and conflict in this proceeding, as he did in the state proceeding.

■ Additionally, it is not apparent that Mack now bases his first claim on a different legal theory than he did on appeal in state court. While Respondent may argue that Petitioner did not completely explicate his claim of conflict with counsel, the failure to fully articulate and support a feder-

al constitutional claim does not automatically preclude exhaustion. In other words, Petitioner need not cite to "book and verse on the Constitution" in order to fairly present the legal basis of his habeas claim. *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (citations omitted). On the record before it, the state court had a fair opportunity to consider the claim and to correct the asserted constitutional defect in Petitioner's conviction. The basic question, whether the trial court abused its discretion and deprived Petitioner of his constitutional rights in denying the motion to substitute, is identical to the question raised in this Court. Therefore, having determined that Mack did, in fact, exhaust the claims in the instant Petition, the Court now discusses each one of his claims in turn.

## II. Petitioner's Claim That The Trial Court Erred In Denying Request To Substitute Counsel And In Neglecting To Inform Him Of His Right To Self–Representation

Petitioner contends that the trial court violated his constitutional rights under the Sixth and Fourteenth Amendments in denying his motion to substitute counsel without a full and adequate inquiry. *See* Habeas Pet. at 24. Petitioner also asserts that his constitutional right to self-representation was violated. *Id.* at 30.

On the first day of trial, April 8, 1991, Petitioner moved to suppress his post-arrest custodial statement. *See* Trial Transcript ("T.") at 15–16. Petitioner's appointed counsel, attorney Alex Sarasua, advised the court that Petitioner had retained another attorney, Clinton Pitts, for purposes of the suppression hearing. *Id.* at 20. However, Pitts was not present in the courtroom. His absence prompted the trial judge to express concern that Pitts would not be available to represent Peti-

tioner. *Id.* at 21. Petitioner stated that he had just obtained sufficient funds to hire Pitts. He then formally moved for court-appointed counsel to withdraw, asserting as grounds ineffective assistance of counsel and conflict. Petitioner testified in relevant part:

> "Your honor, [Mr. Sarasua and I] have discussed my case on quite a few occasions and so far [counsel] hasn't taken the actions or explained to me the actions that he is taking in my favor on this case. I just don't believe [that] I'm getting efficient counsel in this case, so that was the reason for me seeking help from Mr. Pitts."

*Id.* at 23. Petitioner subsequently stated that he and court-appointed counsel had not consulted together on a legal strategy or defense, and that he did not trust counsel. *Id.* at 38. Sarasua, for his part, emphasized to the court that he was uncomfortable representing Petitioner given Petitioner's desire to hire another attorney. *Id.* At this point in the proceedings, attorney Pitts arrived in the courtroom and advised the court that he was not prepared to enter a notice of appearance. *Id.* at 43. He also stated that he had not been retained by Petitioner. *Id.* at 44. The following day, on April 9, 1991, at the hearing on Petitioner's motion to suppress his post-arrest statement to police, Pitts stated that he had now been retained by Petitioner, and was willing to enter a notice of appearance. However, he was not prepared to go forward with the motion to suppress or with the trial itself. *Id.* at 131. The court thereupon denied Petitioner's motion to substitute counsel, stating that he was already represented by competent counsel. *Id.*

It is well settled that the Sixth Amendment guarantees a defendant the right to a reasonable opportunity to secure counsel of their own choosing. *See United*

*States v. Gallop*, 838 F.2d 105, 107 (4th Cir.1988) (citations omitted). A defendant "does have the right to effective representation by appointed counsel, and this right may be endangered if the attorney-client relationship is bad enough." *United States v. Graham*, 91 F.3d 213, 221 (D.C.Cir.1996). However, the right to secure counsel of one's own choice is not absolute. *Gallop*, 838 F.2d at 107. To warrant substitution of counsel during trial, the defendant must demonstrate "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir.1981); *see also Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir.1982) ("In evaluating a trial court's denial of a motion for new counsel, [the federal court] considers a number of factors, including the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense."). When the request is made on the eve of trial, a defendant can substitute new counsel only "when unusual circumstances are found to exist." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir.1997). The court must balance the right of counsel of choice with the broader interests of judicial integrity. *Gallop*, 838 F.2d at 107; *United States v. Bentvena*, 319 F.2d 916, 936 (2d Cir.1963) (restraints must be put on requests for substitution of counsel so that the right will not be "manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice"). However, where the trial judge receives a "seemingly substantial" complaint from a defendant about his counsel, the court has a duty to inquire into the reasons for the dissatisfaction. *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973); *see also McKee*, 649 F.2d at 933.

■ Based on the foregoing, the constitutional issues presented for this Court are: 1) whether Mack became so embroiled in irreconcilable conflict with his court-appointed counsel such that the denial of his motion for substitution violated his constitutional rights, and 2) whether the conduct of the trial judge in denying Mack's eleventh hour request to substitute trial counsel violated his Sixth Amendment right to counsel. In the first place, Petitioner fails to demonstrate that his relationship with Sarasua disintegrated into irreconcilable conflict or that communication between Petitioner and court-appointed counsel broke down irretrievably. It is correct that at the beginning of the trial, Mack advised the court that counsel had not discussed strategy with him and that he did not trust counsel. T. at 38. Despite being invited to do so by the court, Mack did not further explain his reasons in detail for distrusting Sarasua. Thereupon, the court asked Petitioner and Sarasua if they wanted a few minutes to discuss strategy. However, Sarasua informed the court that Mack knew his planned trial strategy. *Id.* He also indicated that he had spent much of the weekend prior to trial discussing the case with Petitioner. *Id.* at 40.

■ Furthermore, while loss of trust is certainly a factor in assessing good cause, a defendant seeking substitution of assigned counsel must nevertheless afford the court with legitimate reasons for the lack of confidence or trust. *McKee*, 649 F.2d at 932; *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir.1985) (stating that "a defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient"). Mack, however, failed to provide specific grounds for his lack of

confidence in his appointed counsel, instead stating generally that counsel had failed to sit down with him to discuss the proceedings, and that he was displeased with present counsel's strategy and did not trust him. Following the denial of his motion to substitute, Mack again only asserted in general terms that he did not trust Sarasua. However, Sarasua later stated to the court that "since [Mack] is being forced to have me as counsel, he wants me to speak up for him and nobody else." *Id.* at 743. Thus, while Petitioner's communication with Sarasua perhaps was grudging at best, communication was not entirely absent. By the same token, evidence of irreconcilable conflict between Sarasua and Mack is lacking.

 In the second place, Mack does not so much quarrel with the quality of the substantive legal representation provided by Sarasua, but rather with the alleged failure of the trial judge to conduct an adequate inquiry about the nature of the disagreement which, Mack claims, violated his Sixth Amendment right to counsel. *See* Habeas Pet. at 28–29; *Hudson,* 686 F.2d at 829 (stating that the "trial court must take the time to conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust and concern"). The record before this Court, however, demonstrates that the trial judge did inquire into the nature of the relationship between Mack and court-appointed counsel. Petitioner informed the court that he wished to have Sarasua withdraw as counsel. T. at 23. The trial court then invited Mack to make a statement and listened to his reasons for desiring new counsel before finding them without merit. *Id.* The record before this Court therefore clearly demonstrates that the trial court conduct-

ed an adequate inquiry, and that Petitioner failed to set forth substantive reasons as to why Sarasua should be discharged.

Furthermore, it should be noted that the trial court indicated its willingness to consider Petitioner's motion for substitution if newly retained counsel could prepare himself in time. The trial judge advised Petitioner that he and Sarasua could try to work out an arrangement in which Pitts could represent Mack at the hearing on the motion to suppress. T. at 46. However, Pitts advised the court that he was not ready to proceed. *Id.* at 131. Had the court then granted the motion for substitution, no alternative counsel would have been immediately available.

 Petitioner also asserts that the trial court's failure to advise him of his right to self-representation violated his rights under the Constitution. *See* Habeas Pet. at 30. This argument, however, is erroneous. A defendant must clearly and unequivocally assert the right of self-representation before a court permits him to proceed pro se. *See Marshall v. Dugger,* 925 F.2d 374, 376 (11th Cir.1991); *Cross v. United States,* 893 F.2d 1287, 1290 (11th Cir.1990); *Raulerson v. Wainwright,* 732 F.2d 803, 808 (11th Cir.1984). Here, the record nowhere indicates an affirmative assertion by Petitioner that he desired to proceed pro se. Instead Petitioner only noted that he preferred to proceed with chosen counsel rather than the court-appointed attorney.[2] Petitioner also stated to the court that he did not wish to proceed with the suppression hearing without his chosen attorney to represent him. T. at 135–36. In fact, Petitioner acknowledged to the court that he "[knew] he couldn't defend [himself]." *Id.* at 24. Ac-

---

**2.** Petitioner asserted to the court as follows: "I'm not happy with my counsel at this time, and I have to go forth with this trial,

but if I had my choice, I would like to have private counsel." T. at 164.

cordingly, Petitioner's request for habeas relief on this ground should be denied.

### III. Petitioner's Claim That The Trial Court Erred In Denying Motion For Continuance

▆▆▆▆ Petitioner asserts that his constitutional rights were violated when the trial court denied his motion for a brief continuance to allow him to retain new counsel. *See* Habeas Pet. at 33. The matter of continuance is traditionally within the discretion of the trial court. *Gandy v. State*, 569 F.2d 1318, 1322 (5th Cir.1978). "The factors the trial court can fairly consider in deciding whether to allow substitute or additional counsel .... include the fundamental right to counsel, the court's docket, the injury to the plaintiff, the delay in reaching decision, the judicial time invested, the expense to the parties objecting and the potential for manipulation or impropriety." *Robinson v. Boeing Co.*, 79 F.3d 1053, 1055 (11th Cir.1996). The Fifth Circuit has summarized the factors a court should take into consideration when deciding whether a trial court abused its discretion in denying a motion for continuance to substitute counsel. These are: 1) the length of the requested delay; 2) whether lead counsel has an associate who is adequately prepared to try the case; 3) whether other continuances have been requested and granted; 4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; 5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; and 6) whether there are other unique factors present. *Gandy*, 569 F.2d at 1324. Moreover, the right to have counsel of one's own choosing may not be used for purposes of delay. *United States v. Kerris*, 748 F.2d 610, 615 (11th Cir.1984); *Bowman v. United States*, 409 F.2d 225, 227 (5th Cir.1969) ("Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay.").

Taking the above-mentioned factors into consideration, Petitioner's argument for a continuance is not entirely without support. While counsel for one of the other two co-defendants initially expressed his objection to any further delay in the trial, he subsequently conceded that he would not oppose a brief continuance. T. at 160. The state also advised the court that it would not oppose a continuance. *Id.*

Still, other factors indicate that there was no abuse of discretion by the trial court in denying Petitioner's motion for a continuance. First, the actual length of the delay requested by Petitioner is unclear. On the second day of trial, Pitts asserted to the court that he now had been retained by Mack and was willing to enter a notice of appearance. T. at 131. However, he added that he was not prepared to proceed, either with respect to the motion to suppress or with respect to the trial itself. *Id.* He did not provide a specific date as to when he would be prepared to proceed. Furthermore, the requested delay came in the midst of a trial which already had been delayed twice. The defendants were arraigned on July 30, 1990. *Id.* at 145. Trial originally was scheduled for November 13, 1990. *Id.* However, all three co-defendants agreed to a continuance to January 14, 1991. *Id.* at 146. On January 14, trial was delayed until April 8, 1991, because Sarasua was not then prepared to proceed. *Id.* Furthermore, the record before this Court demonstrates that Sarasua, the court-appointed counsel, was entirely familiar with the case and was well prepared, as of the April 8th trial date.

▆▆▆▆ With respect to the issue of delay, three days before trial commenced, on April 5, 1991, Sarasua advised the court

that his client wished to substitute counsel. Mack only formally moved to substitute counsel on April 8, 1991. Petitioner plausibly argues that he did not make this eleventh hour request for a continuance to delay trial but because he did not have the financial resources to hire a private attorney until this late date. While Petitioner's argument is compelling, his decision to substitute counsel was dilatory in that it could and should have been made long before the day of trial. It cannot be said that Petitioner was denied ample opportunity to secure counsel of his choice. *See United States v. Sexton,* 473 F.2d 512 (5th Cir.1973) (holding that denial of request for continuance to allow retained counsel to prepare for trial did not deny defendant effective assistance of counsel when defendant had waited more than two months to retain an attorney, court-appointed counsel appeared competent and defendant's motion failed to state when retained counsel would be ready). Even if the Court accepts Petitioner's argument that the delay was caused by his difficulty in raising funds to retain private counsel and not by any desire to impede trial, given that the trial had already been substantially delayed, given that Mack was represented by competent counsel, and given that Mack only moved to substitute counsel on the day trial commenced and substitute counsel could not indicate when he would be prepared to proceed, the trial court did not abuse its discretion in refusing to grant a continuance.

## IV. Petitioner's Claim That The Trial Court Erred In Prohibiting Petitioner From Eliciting Exculpatory Portions Of His Post–Arrest Confession

Petitioner alleges that the trial court violated his constitutional right to due process by improperly excluding evidence at his trial. Specifically, Petitioner alleges that the court's exclusion of part of his post-arrest statement denied him the right to present reliable, material evidence in his defense, and violated his rights to compulsory process and confrontation. *See* Habeas Pet. at 42.

 Donald Slovonick, a police officer with the City of North Miami testified that he interviewed Petitioner at the police station after Petitioner was taken into custody. T. at 988. He testified that he gave Petitioner a written Miranda form which Detective Slovonick read aloud and Petitioner then signed. *Id.* at 989. During direct examination, the state asked Detective Slovonick, "When you did, in fact, interview Mr. Mack, what specifically did he say?" *Id.* at 994. The attorney for one of Petitioner's co-defendants objected on the grounds that Mack's unredacted confession would inculpate his client. *Id.* at 995. Sarasua did not object on behalf of Petitioner. However, Sarasua did argue that the entire post-arrest statement should be proffered so that he could cross-examine Detective Slovonick as to whether Mack gave a definite statement as to how many people participated in the robbery, and so that he could argue in his summation that Mack never made the post-arrest confession. *Id.* at 1007, 1014. At issue was an alleged statement to Detective Slovonick by Mack that "at least three" individuals entered the store. *Id.* at 1007. Sarasua stated to the court as follows:

> "Basically Judge, I want that statement in because, according to what police are saying, this is an inside job, and it's supposed to be . . . planned. Everybody apparently has a certain job, and if [Mack] really gave a statement to the effect that he was going to begin describing . . . that he was involved in this robbery, how is a guy that's going to be doing an armed robbery not going to know exactly how many people were

going to go in, and exactly what these people were going to do, and that's why I want to be able to ask about these ... three other people ... The statement is inconsistent with the evidence that the police have given that they [saw] four people leave the store, and the police see four people leaving the store and, yet, his statement is, 'that three of us went in.' "

*Id.* at 1010–11. Counsel for the co-defendants objected on the grounds that the testimony inculpated their clients because it placed them inside the store at the time the robbery was being committed. *Id.* at 1019. The court reiterated that under *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)[3], defense counsel for Mack could not question Detective Slovonick about the portion of Mack's statement concerning the number of people who allegedly entered the store. *Id.* at 1032.

▮ The Supreme Court has established that criminal defendants have the constitutional right to present a defense, including the right to offer testimony and evidence in their defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). However, the review of a state court evidentiary ruling by a federal court on a petition for habeas corpus is limited to a determination of whether the error, if any, was of such magnitude so as to deny Petitioner his right to a fair trial. *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir.1989) (citation omitted); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir.1984) (stating that generally federal courts reviewing habeas corpus petitions are not empowered to correct erroneous evidence rulings of state trial courts); *United States v.*

*Weisman*, 624 F.2d 1118 (2d Cir.1980) (holding that rulings on admissibility of evidence are within the discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion). Before relief can be granted the error must rise to the level of fundamental fairness. *Boykins*, 737 F.2d at 1544 (citation omitted). A denial of fundamental fairness occurs when the excluded evidence "is material in the sense of a crucial, critical, highly significant factor." *Osborne v. Wainwright*, 720 F.2d 1237,1238 (11th Cir. 1983). Furthermore, even if this Court assumes without deciding that the exclusion of Petitioner's unredacted statement was erroneous, such error is analyzed under the harmless error test pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Under this test, the Court determines whether the error had a substantial and injurious effect or influence in determining the jury's guilty verdict. *Id.* at 638, 113 S.Ct. 1710.

▮ In the first place, it is highly debatable whether the excluded portion of Petitioner's statement concerning how many people entered the crime scene was material in the sense of being a crucial, critical, highly significant factor. Petitioner's claim that the jury would have found his entire confession to be false because Petitioner apparently indicated that he was not certain how many people participated in the robbery is speculative at best. In the second place, this is not a situation in which there was very little evidence against Mack other than his confession. Rather, the proof against him can fairly be described as overwhelming. The prosecution elicited testimony from a number of witnesses who were in the store at the

---

3. *Bruton v. U.S.*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) precludes mention of co-defendants in an inculpatory manner where a statement of one of them is sought to be admitted and the defendant is not subject to cross-examination.

time of the shooting and robbery. Several of these witnesses testified that a man wearing a blue gym suit was among those who entered the store and participated in the robbery. T. at 610–611, 633, 638. Several police officers also testified that they saw four men flee from the direction of the crime scene and get into a car. *Id.* at 756, 875–78. An officer testified that one of the men wore a blue running suit and carried a gun. *Id.* at 877. This man got into the left rear seat of the car. *Id.* at 878. Two officers testified that they saw the man in the left rear seat of the vehicle changing his clothes. *Id.* at 724, 760. This same man, who was identified by two police officers as Mack, was apprehended after he fled from the car. *Id.* at 738, 769. An officer also testified that Mack appeared to be carrying money which he dropped as he ran from the car. *Id.* at 764. Physical evidence taken from the car driven by defendants, such as a trash can filled with food stamps, register tape, a Seiko watch, jewelry and a handgun also pointed to the defendants' participation in the robbery and shooting. *Id.* at 512–21. Given the overwhelming evidence against Petitioner, it is not apparent that any error by the trial court in refusing to admit Mack's entire confession had a substantial and injurious effect on the verdict.

### V. Petitioner's Claim That The Trial Court Did Not Protect His Constitutional Right To Testify In His Defense

Petitioner asserts that his due process rights were violated because the trial court failed to protect his right to testify. *See* Habeas Pet. at 49–50. Petitioner further argues that the court forced him to choose between his right to testify and the right to counsel. *Id.* at 51. A review of the record before this Court demonstrates that the trial court asked the parties whether the defendants intended to testify. Sara-

sua responded: "I don't think [Mack] is going to testify ... I don't want him to testify. I do not. If he wants to push the issue——" T. at 1067. The trial judge then suggested that each of the defense attorneys talk to their clients. *Id.* at 1068–69. Sarasua responded as follows:

> "Judge, I have advised Mr. Mack not to take the stand. He says he wants to take the stand, but he doesn't trust me to be his lawyer to take the stand... Basically he's between a rock and a hard place, because he wants to give his side, but he can't because he doesn't trust me. So basically, I guess it's no, is that correct Mr. Mack?"

*Id.* at 1072. Mack responded, "I guess it's correct," and added that he wanted the lawyer of his choice to represent him. *Id.* The trial judge then informed Mack that he had a right to testify in his own defense, advising him as follows:

> "Mr. Mack, you certainly have a right to take the stand, if you want to, or you have a right not to take the stand, if you want to exercise that right, but if you did want to take the stand at this time, Mr. Sarasua would be your attorney. So understanding that, you decided that you do not want to take the stand. Is that right?"

*Id.* Mack responded that the court was correct. *Id.* The court then asked if Mack wished to make a proffer for the record. When Sarasua turned down this suggestion, the court advised that Mack would retain the option of making a proffer. *Id.* at 1073.

A criminal defendant has a fundamental, constitutional right to testify in his own behalf which can only be waived by him, and not by the trial court or by defense counsel. *United States v. Teague,* 953 F.2d 1525, 1532–33 (11th Cir.1992). If counsel believes it would be unwise for his

client to testify, counsel should advise his client accordingly, and then the defendant can make the choice himself whether to testify. *Id.* Sarasua did advise Mack that he thought he should not testify. Subsequently, the court directly asked Petitioner whether he wished to take the stand. Mack unequivocally asserted that he did not wish to testify. It would be difficult to find a less clear-cut example of a defendant making a choice as to whether to take the stand, and then waiving his constitutional right to testify. Petitioner waived his right to testify in his own defense upon a proper and meaningful inquiry by the trial judge.

Additionally, Petitioner relies on the Eleventh Circuit case of *United States v. Scott,* 909 F.2d 488 (11th Cir.1990) to support his claim that the trial court forced him to choose between "waiving his right to testify or being represented by counsel that he did not want." Habeas Pet. at 51. However, this case is inapposite. In *Scott,* the trial court forced the defendant-appellant to choose between not testifying and remaining represented by counsel where it appeared he would testify falsely, or testify and proceed pro se. The Eleventh Circuit determined that the defendant was forced to choose between his constitutional rights to testify and to counsel. However, the trial court did not impose any such choice on Petitioner. Accordingly, this claim for habeas relief should be denied.

### VI. Petitioner's Claim That The Trial Court Should Have Conducted A Hearing To Determine If His Confession Was Made Voluntarily

Petitioner asserts that the trial court violated his Fifth, Sixth and Fourteenth Amendment rights in failing to hold a hearing to determine whether his post-arrest statement to Detective Slovonick was given voluntarily before allowing the confession to be admitted into evidence. *See* Habeas Pet. at 53. On April 8, 1991, Petitioner moved to suppress his post-arrest statement to police. T. at 21. The court informed Petitioner that a hearing on his motion to suppress would be held on April 9, 1991. *Id.* Accordingly, on April 9, 1991, the court stated that it would proceed with the motion to suppress. *Id.* at 134. However, Petitioner informed the trial judge that he no longer wanted to proceed with the motion if Pitts could not represent him. *Id.* at 134–35. The court stated that Mack would have a brief recess to consider his decision. *Id.* at 137. The court then asked Mack again if he wished to proceed. *Id.* at 161. On behalf of Petitioner, Sarasua advised the court that Mack did not wish to proceed without Pitts as his attorney. *Id.* Subsequently, the state questioned Detective Slovonick concerning Mack's post-arrest statement. *Id.* at 1039–1041. Petitioner did not object to the introduction of this statement into evidence. *Id.*

■ "Florida law requires that the specific legal argument or ground upon which an objection is based be presented to the trial court in order to preserve the issue for appellate review." *Routly v. Singletary,* 33 F.3d 1279, 1292 (11th Cir.1994) (citations omitted). An examination of the record indicates that Petitioner's defense counsel failed to specifically object to the post-arrest statement made by Petitioner at the time that it was actually introduced. T. at 994.[4] Nonetheless, Petitioner cites *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct.

---

4. During cross-examination, Sarasua did move to strike Detective Slovonick's testimony, but on the grounds that the prosecution failed to disclose Slovonick's notes concerning Mack's statement. The court, after reviewing the notes, denied the motion. *See* T. at 1057–62.

1774, 12 L.Ed.2d 908, as support for his claim that the trial court should have conducted a hearing to determine the voluntariness of his confession. *See* Habeas Pet. at 54. However, the Supreme Court has explicitly held that there is no obligation on the part of the trial court to hold a hearing as to the voluntariness of a confession when a defendant does not contemporaneously object to the use of the confession. *See Wainwright v. Sykes,* 433 U.S. 72, 86, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). While Petitioner appears to assert that his original motion to suppress should have alerted the trial court to the necessity for a hearing, Petitioner conveniently glides over the fact that he informed the court that he did not wish to proceed with this motion for suppression, and that there was no objection made when the confession was introduced.

■■■■ The Supreme Court, in *Wainwright v. Sykes,* indicated that a defendant who did not contemporaneously object, and whose attorney did not contemporaneously object, during the defendant's state trial to the involuntariness of the defendant's confession, waived his objection and could not then raise the issue on federal habeas corpus review. *Id.* at 87, 97 S.Ct. 2497. The Court further clarified that pursuant to the doctrine of procedural default, a state prisoner who fails to comply with the state rule is barred from habeas corpus review by a federal court absent a showing of cause for his failure to comply with the state rule and actual prejudice created by the default. *Id.; see also Harmon v. Barton,* 894 F.2d 1268, 1270 (11th Cir.1990) (stating that "where a state court correctly applies a procedural default principle of state law, *Sykes* requires the federal court to abide by the state court decision") (citations omitted). The issue then for this Court is whether Petitioner can show cause for his failure to object at trial to the

admission of his post-arrest statement and prejudice flowing from the confession's admission. The cause excusing the procedural default must result from some "objective factor external to the defense that prevented the petitioner from raising the claim and which cannot be fairly attributable to his own conduct." *Swain v. Singletary,* 42 F.Supp.2d 1284, 1290 (M.D.Fla. 1999) (citing *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). However, Petitioner asserts no cause whatsoever for the procedural default of his involuntariness claim. He therefore has failed to meet his burden of demonstrating good cause for his non-compliance with state procedures. Accordingly, his claim for relief on this ground should be denied.

### VII. Petitioner's Claim That Appellate Counsel Was Ineffective When He Failed To Raise An Issue Regarding The Flight Instruction Given To The Jury

Petitioner asserts that his appellate counsel rendered ineffective assistance for failing to assert in Petitioner's direct appeal that the trial court should not have instructed the jury that it could consider Petitioner's attempt to escape from police in deciding Petitioner's guilt of the charged offenses. *See* Habeas Pet. at 58.

In *Fenelon v. State,* 594 So.2d 292 (Fla. 1992), the Florida Supreme Court held that the flight instruction constituted an impermissible comment on the evidence and "henceforth the jury instruction on flight shall not be given." *Id.* at 295. Petitioner argues that since the *Fenelon* decision was issued during the pendency of his direct appeal, an argument concerning the flight instruction would have, if presented to the appellate court, entitled him to a reversal of his conviction. In particular, Petitioner cites to *Phillips v. State,*

621 So.2d 566 (Fla. 1st DCA 1993) (remanding defendant's conviction for a new trial, finding that *Fenelon* should be applied because it was made during the pendency of defendant's direct appellate review) and *Kelvin v. State*, 610 So.2d 1359 (Fla. 1st DCA 1992) (applying *Fenelon* decision retrospectively because it was decided during the time that defendant's conviction was pending on appeal).

■■■ The state does not dispute Petitioner's reliance on *Fenelon*, but asserts that the fact that Petitioner's appeal was pending does not mean that *Fenelon* could have been applied to Petitioner's case. It cites *Taylor v. State*, 630 So.2d 1038 (Fla. 1993), which mimics the circumstances of the instant case. The Supreme Court of Florida rejected appellant Taylor's argument that a flight instruction was erroneously given at his trial, stating that it intended that its "holding in *Fenelon* be applied prospectively only, and since Taylor was tried before [its] decision in *Fenelon* was issued, the trial court did not err given the circumstances of this case." *Id.* at 1042. Interpreting *Taylor*, the First District Court of Appeal noted that the Supreme Court of Florida appeared to be moving away from prior case law holding that *Fenelon* applies to so-called "pipeline" cases, that is, cases which were pending on direct review or not final at the time of the Fenelon decision. *Gray v. State*, 640 So.2d 186, 194 (Fla. 1st DCA 1994); *see also Wuornos v. State*, 644 So.2d 1000, 1008 n. 4 (Fla.1994) (stating that "all points of law decided by this Court shall be deemed retrospective with regard to all non-final cases unless this Court says otherwise"). Here, the Florida Supreme Court did say otherwise when it stated that *Fenelon* would only apply "prospectively." Therefore, this Court is not persuaded by Petitioner's argument that his appellate counsel should have relied on *Fenelon* in seeking reversal of Petitioner's conviction. Petitioner should not be granted habeas relief on this ground.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above, the undersigned respectfully

RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus [DE# 1] be DENIED.

The parties have twenty (20) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Donald L. Graham, United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

November 14, 2000.